v. United States. May it please the Court, Mr. King is actually innocent of the 924C count of conviction. The procedural default must be excused, and the collateral attack waiver does not apply. Unless the Court would prefer to start elsewhere, I'll begin with Boozley and the more serious charges standard. Here, we must only prove that Mr. King is actually innocent of the 924C count of conviction and not of the dismissed counts. I'll start where you start, even though I think there are a lot of leaps to get there. But to just go with you for a second, if I was comparing on the most serious question a guideline range, and again, I'm taking your assumption that we look at guidelines and not statutory maximums, a guideline range that was 51 to 60 on the one hand and 51 to 63 on the other hand, which one of those would be more serious? In a given case, the one that has the high end of 63 may be more serious. This is a yes or no, this is a binary thing. So which one, I've told you there's conviction X that's 51 to 60 and conviction Y that's 51 to 63. Which one is more serious? Well, in Mr. King's case, I'm talking about hypothetically right now and then we're going to get there. I think it's fair to concede that hypothetically when you've got those two generic ranges, the one with the higher high end is reasonably thought to be more serious. Okay. All right. So now I'm going to ask you about Mr. King's case. So in Mr. King's case, the conspiracy to commit Hobbs Act robbery and Hobbs Act robbery had a guideline range of 51 to 63. So under my hypothetical, they are Y. Mr. King's guideline range, because he was capped under 371 at five years, was actually 51 to 60. Do you agree with me that his guideline range was actually 51 to 60? I do, Your Honor. Okay. So comparing the same exact convictions, so conspiracy 371 on the one hand and 951 on the other hand, the same thing, one's capped, one's not. You agree with me that Y would be greater than X? Not in Mr. King's case because he was sentenced at the low end of 51 months. And so here the district court determined that was the measure of seriousness. Yeah, but now you're changing the ball a little bit. So, you know, I'm having a hard time seeing that statutory maximums are not the measure, but I'll take you right now that the range is the maximum. Now you're telling me it's the actual sentence that matters? That to me seems completely contrary to even the law that you all rely on to get to the point that you're at. If the range here, if you agree with me the range here is less than it would have been for the exact same convictions but not under 371, under 1951, then I don't see how even accepting that we assume away actual innocence and we apply Boozley and we apply this and we look to the guidelines as opposed to statutory maximums, how one is not greater than the other. Here, if Mr. Kane had been convicted of the armed bank robbery, for example, the guideline range, as you say, would have been 51 to 63 months. But the ultimate sentence here would have been 51 months, the low end, because those facts in the dismiss counts were still in the PSR, in the district court's mind, and in the government's mind when it recommended that low end. So here they are equivalent. But wouldn't those same facts have been, I don't understand why those, I don't understand why you separate those out. If those same facts would have been considered for the alternative charge and the point of this rule is to show that the defendant didn't escape some more serious charge, why wouldn't all the same factors that apply on the actual sentence here apply in the other case too? If I understand your question correctly, Judge Grant, if Mr. Kane, you're asking if Mr. Kane had been convicted of those dismiss counts, then what would have happened in that case, in that instance? Right. Well, all of the same facts were in play, as I said, and so the guideline range, while it would have had a high end of 63, that high end would have been irrelevant or beside the point because the government and even the court itself determined the low end was the proper sentence here. But why doesn't Boozley encompass equally serious crimes? In that case, the Supreme Court considered the State's argument that the defendant needed to prove actual innocence of another charge under the same statutory provision. So why doesn't that suggest that even in Boozley itself, the Supreme Court considered, although it used the language more serious, it actually applied it to equally serious crimes? No, Your Honor. Why? That proposition that you've offered here is inaccurate. In Boozley, on page 624, the Supreme Court expressly said that the district court on remand is not to consider whether or not Mr. Boozley is innocent of the carrying version of 924C. The government in Boozley asked for that very remand. The Supreme Court said no. On remand, you're only to consider the actual innocence of Boozley on the use variant of 924C, which was vulnerable at that point after Bailey. There were no dismissed counts in Boozley for the district court to measure on remand. And Boozley's proposition it gave us of looking at more serious charges was in effect dicta because there, there were no more serious charges dismissed as part of a plea negotiation. It was a supposition that the court has offered that we now live with today, but we ought to take the court at its word. Has the Seventh Circuit interpreted that differently? Yes. Yes, the Seventh Circuit in Lewis did say otherwise. However, the Seventh Circuit misunderstood the same point that I'm making here, that the Boozley court did not remand for an evaluation of equally serious charges. We're misunderstanding or we're reading too much into the motivations of the Supreme Court. It offered the more serious charges standard but didn't require the district court there to apply it. It's left for future cases. Can I go back to your earlier point? Tell me the case which says that we look at, and I know you say Boozley's dicta and we should ignore this whole thing, but applying Boozley or what you say is the dicta in Boozley, which court has said that we look at the actual sentence given to determine what, what would have happened and not the range, either the guideline range or the statutory maximum? Judge Luck, I. There's none. I don't, and I don't mean to rely on that new standard. Certainly I don't mean to invent a new standard. If I could. Counsel. Yes. There's none, right? Correct. Okay. Correct. So as I understand the case law, and it may be that you're completely correct, it may be, but as I understand the case law, there are two sort of variants. One is we look at the statutory maximum, and I can understand that argument, and the other is we look at the guideline range. I'm a little less convinced, but I understand it.  No, I don't, Your Honor. Tell me why not. The guideline range is the prevailing barometer of seriousness, and as I said, I consider these to be equally serious with the 371 count. If I could. How is that possible, though, if we go back to my, again, category X and category Y? Here, if he was charged with the 1951 counts, if he hadn't pled to those, the range would have been up to 63, and as the first question I asked you, I got you to at least hypothetically concede that that would be more serious than a guideline range that was 51 to 60. I don't have a better answer for you, Your Honor, on that topic. I do have a relevant response that I hope the court will consider. We're assuming that the proper comparator is between the dismissed robbery count and the 371, but the proper comparator may well be the dismissed armed robbery and the 924C count of conviction that is now vulnerable after Davis. The Supreme Court did not say to compare the dismissed counts with non-924C counts of conviction. The 924C count here ought to be the comparator. But it's the benefit of the bargain. In other words, he was going to be convicted of 924C no matter what. The only difference, the only thing to compare it to would be the benefit of the bargain, which is the 371 count that didn't exist before the plea, and the 1951. Can I ask you something else? You're in this business. You're in the criminal defense business, right? Yes, sir. Okay. As a criminal defense attorney doing criminal defense work in the federal courts, if a prosecutor came to you and said, I'm willing to plead your client out to 371 and your client is convicted of name offense, because almost all of them have a higher max than 371, would you not jump at that? Is there not 100 out of 100 criminal defense attorneys who would jump at that plea? Often, yes, Your Honor. Almost always, right? Because it's a huge benefit. It may be. Yes, it is a benefit. However. Is it a benefit in every drug crime, every 841 or 846, other than maybe slight possession? Your Honor, to make sure I understand your question, are you asking if the 371 count would be a benefit compared to an 841 count? Right. It certainly could be. It has a much lower potential sentence. For almost any Hobbs Act, it's a benefit, right? Yes, it does. Right. So I guess what I'm asking is, I know why we have to get in the weeds of this, but if we just step back for a second, everyone would agree that a 371 is a huge benefit and someone would take that over the alternative 99 times out of 100. Yes. And that, in fact, supports our position here. And the reason is, if the other counts are being dismissed in lieu of the 371 count, it may be a palatable agreement, and the defendant and counsel might embrace that. However, if the government does not make that 371 offer and instead insists on a plea to other counts, then maybe we have no plea agreement at all. There may be no meeting of the mind. There may not be this tradeoff that we see now with the 371 account. The other question that Your Honor has posed is, what is the rationale of the Boozley Rule? We do not know. The Supreme Court did not tell us. The Supreme Court offered, and we embrace the more serious charges standard, if I misrepresented that, Your Honor. I didn't mean to. It is technically DFCA, but it is the rule that we ask the court to follow. Boozley did not tell us why it wrote that standard. It offered no insight into it. You're running out of time, so I want to ask you one other thing. There are two different hurdles for your client. What do you think that we should consider first, waiver or procedural default? Is there an order that we're supposed to go in considering this? There is no order that the court is supposed to go, Your Honors, have the freedom to choose whichever route you see fit. They are cousins. The two issues relate to the actual innocence of Mr. Cain. We're asserted, though. We're the government asserts it. Haven't we always, or can you tell me a case where we've foregone the waiver to get to whatever the substantive issue is? I've just never seen it. No, Your Honor. I don't believe I have either. So the court may reasonably start with the appeal waiver, but it need not. I do think that we obviously have to cross both thresholds to win here. I do believe the argument that we made about actual innocence will carry the day for us on both issues. So the court, the order won't make a difference in the outcome for us. You're certainly, of course, free to decide the appeal waiver first. And under the Bouchard rule in this court, in which the panel held that there are certain fundamental legal landmarks that must always prevail over a generic waiver, actual innocence, miscarriage of justice, and sentences over the statutory maximum certainly fit that bill, and we've shown that here. Thank you. Thank you. Mr. Mendel. May it please the Court, good morning. Gabriel Mendel for the United States. Mr. King's collateral attack on his 924C conviction is barred on two independent grounds. First, he procedurally defaulted this claim by failing to raise it at the appropriate time. Second, it is barred by the contractual waiver that he agreed to as part of his bargain for plea agreement in exchange for the dismissal of charges and a sentencing recommendation for the government. I'll follow my colleague's lead and start with procedural default. There seems to be no dispute that this question turns or falls on Boozley, and as the Court has already recognized, there are only two questions that have been put. Do you agree that he is actually innocent? So, Your Honor, the way we read Boozley, the actual innocence question extends to the foregone charges. So the answer is no. He is factually innocent, or at least we assume he is factually innocent, of the contested 924C. So he'd be actually innocent? No, Your Honor, because what Boozley says, or our reading is that— Fair enough. I understand what you're saying. But you agree that because of Davis, he is factually innocent of the 924C charge? For purposes of this appeal, Your Honor, we think it's a little ambiguous where the line is between legal insufficiency— So for purposes of this appeal, it doesn't work for me. If we're assuming it away, then we can assume it away. Yes, Your Honor, that's what I meant to say. We assume that he is factually innocent of the 924C he is contesting. So I'm asking, is he in fact? I understand you want us to assume it away. Is he factually innocent of 924C? Of the one that he pled guilty to, yes, Your Honor, because it was predicated on a conspiracy which can no longer be a valid predicate after Davis. Well, how is that factual innocence? In other words, I understand the Supreme Court has said that the residual clause, as applied to anybody who is convicted of an offense that can only be under the residual clause, is unconstitutional. But how is that factually innocent? In other words, Bailey, as I understand it, said, for this fact pattern, you can never be convicted under the statute, under any version of it. That seems to be very different than this statute is unconstitutional as applied to this particular conviction because it can only rely on the residual clause, and that clause is unconstitutional. But he could be convicted of it before that constitutional impediment was there, right? That is correct, except that Davis stands, I think, for the proposition that that was never a valid predicate. Not only is it not valid now, but it wasn't valid at the time, and that if all we had was that he committed a conspiracy— Not valid because of its unconstitutionality. Correct, yes, Your Honor. In other words, what Bailey said is the statute never covered this conduct. Courts had applied it that way, but it never carried that conduct. That's not the question here. The question is the statute clearly covers the conduct. It's just as applied there, as applied in this particular case, it is unconstitutional. I'm not used to making the defender's argument, Your Honor. I think the best argument they could make— I want you to tell me what the government's position is because this matters. Right. Your Honor, our position is if he could not have been convicted of this crime because this could not have been a valid predicate, he's factually innocent because if all he did was carry a firearm as part of a conspiracy, that is not a violation of 924C after Davis. But there's no dispute he's not factually innocent of the dismissed charges, the Hobbs Act conspiracy, the armed bank robbery, and the 924C, which originally was predicated on the armed bank robbery, which would still be valid. And our position is that there are two questions arising out of Boozley. One is, does it extend to equally serious or only more serious? And the second is, how do you measure? Can I—so I want to go to where I started with your opposing counsel. Yes, Your Honor. Now that we got sidetracked and are back on track now. Yes, Your Honor. Do you agree with me that even if we take the guideline approach, even if I assume a way that we can judge more seriousness or less seriousness based on the guideline range, that the guideline range for the 371 offense is in fact less than it would have been for the conspiracy to commit Hobbs Act and Hobbs Act robbery counts? That's right, Your Honor. Mr. King loses no matter how the court answers the two questions that arise from Boozley. Why did I have to figure that out myself without seeing that in your brief? Your Honor, it's the hard thing about being the appellee is that the defendant raised that in his reply brief, this argument about the guidelines are the appropriate measure, and so I don't have a chance to respond. The best I can do is bring it to you here today. If you go to 5G 1.1 in the guidelines, you'll see that where the statutory maximum is lower than the high end of the guideline range, the high end of the guideline range is the statutory maximum. So here, as the court has already illustrated and as my colleague has conceded, the guidelines he faced for a 371 was 51 to 60. For the other offenses, it would have been a 51 to 63. So no matter how you interpret it, if you accept all of his arguments, he still loses. It's even worse than that because if you go to paragraph 22 of the pre-sentence report, you'll see that he avoided a five-level increase for possession of a firearm because of the 924C conviction, which he says is now invalid. So if we actually went back and did a re-sentencing in this case, his guideline range on the 371, if not for the statutory maximum, would be 87 to 108 months. In other words, to avoid double counting, they take away the five-level. Exactly right. He would have gotten that back without the 924C. Exactly right, Your Honor. And I think working backwards, one of the things that this illustrates is how inappropriate the guidelines are as the proper measure because in every case, it's going to require courts years or decades later to do these counterfactual reconstructions of what enhancements would have applied, what would the government have put forth at sentencing, what objections would the defendant have made. The better course would be to just stick with the statutory maximum, which this Court and the Supreme Court in other contexts have already recognized as the appropriate measure of an offense's relative seriousness. If you go to Lewis v. United States, the Supreme Court, in judging whether a defendant's Sixth Amendment jury trial right attaches, said we measure seriousness by the objective indicator of seriousness, which is reflected in the legislative judgment shown in the statutory maximum. The same in Jackson v. Walker, where this Court, as the Fifth Circuit at the time, used the statutory maximum to decide whether defendants' due process rights were violated via vindictive prosecution, whether subsequent charges brought more serious or less. This Court used the statutory maximum to find that they were less. It reflects the fact that post-Booker, the district court has the discretion to sentence anywhere in the statutory range. And so this is what makes the Third Circuit's decision in Lloyd and the Eighth Circuit's decision in Halter so interesting, because those are two of the circuits that had adopted the guideline range as the measure, but they did so in 1999 and 2000, when the guidelines were binding. And the D.C. Circuit has applied it post-Booker. That's correct, Your Honor. In the Casso case, which is in some ways the best case for my colleague and in some ways the worst case, because what the D.C. Circuit found was that Boosley applies to equally serious charges and then uses that assumption to explain why the guidelines are the best measurement. Of course, my colleague acknowledges, even under his theory, equally serious if measured by the guidelines or statutory maximum he loses. Can I fast-forward a little bit to the appeal waiver or the collateral attack waiver? Yes, Your Honor. What did we mean in Busher when we carved out something for sentences imposed in excess of the maximum penalty provided by statute or may not impose a penalty for a crime beyond that which is authorized by statute? First, Your Honor, we don't know because that was dicta. It was explicitly dicta. If you look at footnote 18 of Busher, so Busher is the case where this court held as a matter of first impression, we will apply waivers. It's pretty good dicta. We've applied it, at least repeated it, and seem to have applied it a couple of times. What this court has referenced it but never had to apply it and never had to excuse someone from their waiver on that basis. But what Busher, even if it stands for the idea that there's an illegal sentence exception, the same exception does exist and has been recognized in other circuits, like the Seventh and the Ninth Circuit, which held in their published opinions in Goodall and Oliver that whatever that exception means, it doesn't extend to a claim like this. What it stands for is the parties agree to a plea. He pleads guilty to some offense. And then we get to sentencing, and the court says, I don't care that the stat max is 10 years, I'm giving him 20 years. So I'm sentencing him to a public flogging, I think is an example you see in the jurisprudence. And what the Ninth Circuit explained in Goodall is that exception doesn't apply here because what Mr. King is doing is he's not just saying I have an illegal sentence. He's saying I have an invalid conviction, and therefore any sentence that results is illegal. Would that be true of any constitutional defect in a conviction? Absolutely, Your Honor. And so it's— And what have we said? Have we applied waivers, collateral attack and appeal waivers, even where it's been alleged that there was a constitutional defect in a conviction? Frequently, Your Honor. For Booker, Apprendi challenges, the court's jurisprudence is replete with the recognition that defendants can waive their constitutional claims. That's one of the values that they can put on the table. It's one of the few things frankly— In other words, a Davis claim is just a due process claim, right? That's right. This statute, as applied to me, was defective because it did not give me notice of what I was going to be convicted against, and a waiver is a prospective waiver of constitutional claims. Yes, Your Honor. And as the Ninth Circuit recognized, expanding this exception to cover a claim like this is the exception that swallows the rule. A collateral attack or an appeal waiver has no value if all you have to do to overcome it is show a valid claim. That would mean that the waiver only applies to invalid claims, which this court has refused to do. And what the Ninth Circuit also recognized, not only is such an exception unjustified, but imagine the damage that does to future defendants. Now, my colleague obviously is here representing Mr. King, but this court has to craft a rule for all defendants. And if a defendant cannot put an appeal waiver, a collateral attack waiver, on the table and have it mean something, have it be a promise that actually means something to the government, well, the government's not going to bargain for that. And so this court has always applied contract law principles. If a defendant promises something and he receives the benefit of that bargain, he's going to be held to that promise. And that's what happened here. As the Seventh and Ninth Circuit recognized, unfuture developments in the law are one of the exact things that these plea bargain waivers are for. That is a risk that both parties have at the time, and they allocate that risk via contract. And the defendant assumes that risk. And all the government comes forth today and asks the court to do is hold the defendant to that promise. The exception he asked for has been recognized nowhere. There is no court in this country that has found an exception that would excuse or that would allow a garden variety collateral attack like this, which simply says my conviction is invalid, ignore the waiver, and let me challenge it anyway. All right. Even if we accepted the beyond the statutory maximum exception to the appeal waiver, would we not employ an exception to that exception based on this drop charges? I think the beyond the statutory maximum exception is nothing more than a miscarriage of justice exception, which we know under the Bousley, did or not it's been followed. It's not a miscarriage of justice if the drop charges would be valid.  And I do agree with my colleague to that extent, that if the court were to assume the existence of something like a miscarriage of justice exception, it would have to take the same holistic approach that the Supreme Court and this court have recognized in the procedural default context. And I would point the court to one case that my colleague suggested somehow that the proper comparator for a 924C that's being challenged is only the 924C that was dismissed. If the court looks at U.S. v. Montana, which is one of this court's published precedents, in that case the defendant had been charged originally with four 841 drug trafficking offenses and one 924C. He was allowed to plead guilty to just one of the drug trafficking offenses and to the 924C. He came forward with a collateral attack on the 924C, said I'm actually innocent of that 924C. And what this court said in Montana, applying Bousley, so whether Bousley or not is dicta, Montana certainly isn't. And what this court said is the defendant has to show his actual innocence of all of the dismissed charges, including the three drug trafficking offenses that were forgone. So there is no support for the idea that this court only compares the 924C from the original charges and not the dismissed conspiracy and robbery. For the reason we've already discussed, Mr. King loses no matter what way the court answers the questions. We would submit that the Seventh Circuit and the D.C. Circuit have the better reading of Bousley that equally serious applies. But since this case can be decided without reaching that, there's really no need for the court to answer that question at this time and under the principles of judicial restraint probably ought not to. If there are no further questions, I thank the panel for its time. Three circuits have held that the proper measure of seriousness is the sentencing guideline range and not the statutory maximum. What about the point that at least two of those were before Booker, which means that now the court could sentence anywhere within the statutory maximum, whereas before Booker they're bound by the guidelines? Well, the same principle applies even in the advisory guideline world since Booker. Caso in the D.C. Circuit said so in 2013, and that makes sense because the guidelines are what the Supreme Court calls the lodestar of any federal sentencing hearing. They're the most important pillar when a defendant and the government decide whether to reach a plea agreement, and they're the first task for any federal sentencing judge at the hearing. It is the center of any ultimate federal sentence, and here we see that in practice. The statutory maximums here offer very little relevant information because the court imposed a sentence at the low end of the guideline range. Chief Judge, then Chief Judge Merrick Garland of the D.C. Circuit, expressed this well in the Caso opinion. Do you know how many guideline sentences are given in the post-Booker era, or I should ask how many are not given? Yes, Your Honor. In the Northern District of Georgia where I practice, judges impose below-guideline sentence in the majority of cases. Right, so not much of a lodestar, right, if that's the range. If judges more than half the time, I have a statistic about 47 percent nationwide. So if 47 percent nationwide are not giving guideline sentences, it's not really a great barometer of what's more serious or not, right? Well, it is because that's where the court has to start. It's a gravitational pull where everyone begins the sentencing hearing and then decides from there what's the reasonable sentence. And the district court is required by law, by this court, to first calculate the guideline range above all else. And, Judge Luck, in the large majority of variances, they are downward, not upward. The statutory maximum offers very little in the large majority of federal sentencing cases. Can I go back to my question to you I asked earlier? Why the rush for 371s? Why are defense attorneys clamoring to the prosecutor's door for 371s? I remember why. Do you remember? Yes, certainly. In general, as you said earlier, Judge Luck, that is going to provide a better ultimate sentence. To cap exposure. Yes, sir. Yes, sir. Compared to if, say, a defendant pled to the entire indictment or went to trial. If that's the reality, then why would the maximum not be relevant to that analysis? In other words, if the point of 371 is to cap exposure in the vast majority of cases, which it is, and it was here, then why would that not be the relevant barometer, the statutory maximum, rather than whatever the guideline is? Well, we don't know here, even in Mr. King's case, that that particular cap was the sole reason for the plea, Your Honor. We're asking ourselves here to go back in the time machine and put ourselves in the position of the parties years later in some particular plea negotiations, and we simply can't reasonably do that. Would it be more complete to say both, then? How about the maximum sentence or the guideline sentence? Has anyone suggested that? Most courts have chosen one route or the other. I don't think that both is appropriate, Judge Grant, because the guidelines are far more valuable than the statutory maximum, as I've explained a moment ago. I see that my time has passed. If I could complete my answer, then I'll finish. Sure. Thank you. Two of the cases on the list that the Court sent to us a few weeks ago speak to your last question, Judge Grant. In Lewis, in the Supreme Court, and in Jackson, the Fifth Circuit, held that the statutory maximum was relevant in measuring whether charges are more vindictive or measuring whether a right to a jury trial applies, but there the only option to measure seriousness was the stat max. Federal sentencing is much different. There is another and better alternative, and that's the guidelines. That wasn't true in 96. That wasn't true for Lewis. Lewis is a 96 case. Yes, Your Honor. That was the jury right in a pettite versus serious offense. The statutory maximum was the only available measure of seriousness because there was no federal sentencing guidelines in the mix there. Thank you. Thank you. You have your case. We'll move to our last case.